UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
FAMILY FASHIONS, INC.

              Plaintiff,

     - against -

STERLING JEWELERS, INC. and
DOES 1-10,

              Defendants.
--------------------------------X

**MEMORANDUM AND ORDER**

18 Civ. 9919

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Family Fashions, Inc. brings this action against defendant Sterling Jewelers, Inc. ("Sterling"), asserting breach of contract, fraud, and violation of New York General Business Law ("GBL") § 349.[1] Defendant now moves, pursuant to the Federal Rule of Civil Procedure 12(b)(6), to dismiss plaintiff's amended complaint in its entirety. For the following reasons, defendant's motion is granted in part and denied in part.

## BACKGROUND

    Family Fashions, a California corporation, is a personalized jewelry manufacturer and designer. Am. Compl. ¶ 3. Sterling, a Delaware corporation with its principal place of business in Ohio,

---

[1] Plaintiff is also suing defendants Does 1 through 10. Family Fashions alleges that, although it "does not know the true names and capacities" of the defendants, it believes that each defendant "is responsible in some manner for the occurrences" alleged in its complaint. Am. Compl., ECF No. 20, ¶ 12. However, plaintiff does not even attempt to allege any plausible basis for asserting claims against those unnamed individual defendants.

1

is "a leading specialty retail jewelry company" that operates jewelry stores such as Kay Jewelers, Jared, and Zales. Id. ¶¶ 2, 11. Family Fashions served as a jewelry vendor for Sterling until Sterling terminated its contractual relationship effective July 31, 2018. Id. ¶¶ 3, 19.

Plaintiff alleges that the effective contract governing its vendor relationship with defendant is the Third-Party Fulfillment Agreement dated October 13, 2010 ("2010 Fulfillment Agreement"), which was renewed annually. Id. ¶ 19. According to plaintiff, defendant breached the 2010 Fulfillment Agreement in four ways. First, defendant allegedly placed plaintiff's products in increasingly unfavorable locations "on print and catalogue statements, stuffers, handouts, in eCommerce campaigns and on the various division websites" even though defendant had a contractual obligation to promote plaintiff's products in good faith in exchange for plaintiff's promotional assistance contribution ("PAC") payments. Id. ¶¶ 30(B), 33. Second, defendant unilaterally gave itself a 2% discount for vendor payments it made to plaintiff within 30 days of invoice from March 2017 through August 22, 2017, even though the payment terms under the 2010 Agreement did not give defendant any discount on vendor payments. Id. ¶¶ 30(C), 34. Third, while the 2010 Agreement allowed Sterling to return plaintiff's products as long as the returned products were not "gold or platinum items with excessive wear, damages or

2

alterations," id. ¶ 30(D), defendant allegedly demanded that plaintiff provide replacements and/or refunds for jewelry that did not meet the limitation. Id. ¶ 35. Fourth, after terminating the 2010 Agreement, defendant did not return the custom in-store display units that plaintiff had provided from 2013 through 2016 to facilitate sales at defendant's stores. Id. ¶ 32.

In addition, plaintiff alleges that defendant committed fraud by misrepresenting its intent to sell plaintiff's photo jewelry at defendant's stores. In April and May 2015, plaintiff initiated discussions with defendant regarding its idea of "developing personalized photo jewelry for sale." Id. ¶ 39. According to plaintiff, defendant made the following representations: (1) defendant reiterated its commitment to plaintiff's development and creation of a personalized photo jewelry line, id. ¶ 39(A); (2) defendant told plaintiff that it wanted to "prioritize" the launch of the jewelry line and requested information to "estimate their projections" because defendant's senior executives were "interested in the program," id. ¶¶ 39(G),(I),(M); and (3) three weeks before defendant's termination of the 2010 Fulfilment Agreement with Family Fashions, a Sterling executive informed Family Fashions that it had engaged outside consultants regarding the project, and that a team would be assigned within a week to "get Family Fashions through the process by 9/1/2018," id. ¶¶ 39(M),(O). Plaintiff allegedly relied on defendant's

3

representations and invested over $500,000 in the photo jewelry line project. Id. ¶ 40. After terminating the Agreement, defendant allegedly "created photo jewelry through a source in China" and was planning "an extensive launch of photo jewelry . . . to capitalize on the 2018 holiday season." Id. ¶ 41.

Finally, plaintiff alleges that defendant falsely and misleadingly represented the benefits of its Extended Service Plan ("ESP") to consumers since April 2011. Id. ¶ 21. The ESP, based on defendant's promotional materials, is a "repair plan" that allows customers to return their purchased jewelry for repair without an additional charge. Id. The cost of the ESP is based on the purchase price of jewelry. Id. ¶ 22. According to plaintiff, when a consumer who purchased the ESP returns a product, Sterling's practice is "to send the jewelry back to the respective vendor and demand [a] replacement – not repair – at the vendor's sole expense." Id. ¶ 23. Plaintiff asserts that defendant's representations of the ESP are deceptive and misleading and are in violation of GBL § 349 because: (1) defendant receives the repair and replacement service from its vendors for no additional cost pursuant to the vendors' existing contractual obligations; and (2) Sterling effectively provides the repair service to all customers regardless of whether they purchase the ESP by demanding its vendors, such as Family Fashions, to make replacements of the jewelry returned by any customer. See id. ¶¶ 24, 25, 50-54.

Plaintiff was allegedly harmed by defendant's "deceptive practices" by incurring financial losses, such as "the cost of the original damaged stones, the labor to create the original piece, and repair fees." Id. ¶ 55.

Plaintiff filed its complaint on October 26, 2018. See ECF No. 1. Defendants filed a pre-motion letter seeking leave to file a motion to dismiss. See ECF No. 14. Plaintiff responded to defendants' letter, see ECF No. 19, and amended its complaint, see ECF No. 20. After reviewing the letters and the Amended Complaint, this Court granted defendant leave to file its contemplated motion, see ECF No. 26, which it did on February 20, 2019, see ECF No. 28.

## **DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining whether a claim has facial plausibility, "we accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." Iqbal, 556

U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). In ruling on a motion to dismiss, the Court may consider "documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." DKR Capital, Inc. v. AIG Int'l W. Broadway Fund, Ltd., No. 03-cv-1568 (JGK), 2003 WL 22283836, at *1 (S.D.N.Y. Oct. 2, 2003) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

## I. Breach of Contract

To succeed on a claim for breach of contract, a plaintiff must demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co., 375 F.3d 168, 177 (2d Cir. 2004) (internal citation and quotation marks omitted). A court should construe a contract as a matter of law only if the contract is unambiguous on its face. See Metro. Life Ins. Co. v. RJR Nabisco

Inc., 906 F.2d 884, 889 (2d Cir. 1990). A contract is unambiguous when the contractual language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." Keiler v. Harlequin Enterprises Ltd., 751 F.3d 64, 69 (2d Cir. 2014). "If a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993) (internal citations omitted).

Defendant argues that plaintiff's breach of contract claims fail for two reasons. First, defendant asserts that plaintiff relies upon a superseded agreement and that the 2016 Third Party Fulfillment Agreement ("2016 Fulfillment Agreement") – which defendant alleges is the operative contract governing the parties' business relationship – permitted the challenged actions. See Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Br."), ECF No. 28-1, at 2. Second, even if the 2010 Agreement controls, the Agreement references and incorporates other contracts that were executed between the parties, and the terms of those other contracts authorize the actions that form the basis of plaintiff's claims. See id. at 5. We consider each argument in turn.

### A. 2016 Fulfillment Agreement

The 2016 Fulfillment Agreement was executed between Signet Group Services US Inc. "on behalf of itself and its Affiliates"

7

and Mendelson & Associates.  See Def.'s Br. Ex. 2 ("2016 Fulfillment Agreement"), ECF No. 28-4, at 1. According to defendant, the 2016 Agreement is binding on the parties because: (1) the parties are "affiliates" of Signet Group Services US Inc.[2] and Mendelson & Associates[3]; and (2) the Agreement "constitute[s] the entire, final, complete and exclusive agreement between the [p]arties and supersede[s] all previous agreements or representations, oral or written, relating to [the 2016 Fulfillment] Agreement," id. § 12.12.

However, plaintiff's operative complaint does not reference or include as an exhibit the 2016 Fulfillment Agreement, and nowhere does the complaint indicate that plaintiff relied on the 2016 Agreement in bringing its lawsuit. By relying on a document that is outside of plaintiff's pleadings, defendant effectively invites this Court to convert its motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion for summary judgment under Rule 56. We decline to do so. See, e.g., Peck v. Baldwinsville Sch. Bd. of Educ., 7 F. App'x 74, 75 (2d Cir. 2001) (finding that the lower court erred in converting the defendant's motion to dismiss into a motion for summary judgment without giving

---

[2] In its reply brief, defendant references Signet Jewelers' 2018 company annual report, which allegedly demonstrates that Signet Jewelers Limited is affiliated with defendant. See Reply in Supp. of Def.'s Mot. to Dismiss, ECF No. 33, at 2. However, the report does not contain any information about any affiliation between Sterling and Signet Group Services US Inc.

[3] Family Fashions admits that it is a division of Mendelson & Associates. See Am. Compl., at 1.

8

a reasonable opportunity to present all pertinent materials because the plaintiff was entitled to take "pertinent discovery"). Thus, we do not consider the 2016 Agreement in resolving defendant's pending motion.[4]

**B.    2010 Fulfillment Agreement**

Under the 2010 Fulfillment Agreement, the terms of other vendor agreements between Family Fashions and Sterling "are deemed incorporated into and made a part of this Agreement." Am. Compl. Ex. A ("2010 Fulfillment Agreement"), ECF No. 20-1, § 5.5. Defendant asserts that two other agreements were incorporated into the 2010 Agreement: the Vendor Buying Agreement ("VBA") and the Signet Jewelers Master Supplier Manual ("MSM"). Those agreements were amended and re-executed by the parties annually.[5]

---

[4] In addition, nothing in the 2016 Fulfillment Agreement creates a strong inference that it superseded the 2010 Fulfillment Agreement. As plaintiff maintains, the 2016 Agreement was executed "to establish an additional business relationship relating to retail sales for Zales in Texas," Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp."), ECF No. 31, at 3, and defendant explicitly stated that the 2016 Agreement was not terminated when it terminated in writing the 2010 Agreement, see id. Ex. E, ECF No. 31-6, at 5. Since we do not consider the 2016 Fulfillment Agreement or Signet's 2018 company annual report in resolving defendant's pending motion, we deny plaintiff's request for leave to move to strike the documents from the record or to file a sur-reply to address the 2016 Agreement and the annual report, see ECF No. 34.

[5] Plaintiff asserts that the MSM was "secretly amended" in 2015 without its approval. Pl.'s Opp., at 7. According to plaintiff, the new language amending the 2014 MSM was not properly highlighted or indicated and should not be binding on plaintiff. Id. at 8. However, as defendant maintains, contracting parties are bound by all of the terms of their agreements even if a party has not read the entire agreement. See Burton v. Label, LLC, 344 F. Supp. 3d 680,693 (S.D.N.Y. Sep. 30, 2018) ("Under New York law, a party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a document on the ground that he or she did not read it or know its contents." (internal citations omitted)).

Plaintiff does not dispute that the two agreements governed the parties' contractual relationship. In fact, although plaintiff did not attach the VBA or the MSM to its complaint, it clearly references several provisions from those agreements. Compare Am. Compl. ¶ 30(D) (alleging that Sterling could not return for repair "gold or platinum items with excessive wear, damages or alterations") and Def.'s Br. Ex. 5 ("2017 MSM"), ECF No. 28-7, at 49 ("Gold or platinum items with excessive wear, damage or alterations . . . that render the item unrepairable will not be returned."). Accordingly, we consider the 2016 and 2017 VBAs and the 2017 MSM to be incorporated into the 2010 Agreement. See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (finding that the court could consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit" at the motion to dismiss stage).

**C.  Claims of Breach**

Plaintiff alleges that defendant violated the 2010 Agreement in four ways. Addressing first plaintiff's breach of contract claim based on defendant's unfavorable placement of plaintiff's products on defendant's websites and promotion materials, we grant defendant's motion. Plaintiff asserts that the conduct breached an implied covenant of good faith and fair dealing because defendant had a contractual obligation to promote plaintiff's products "in good faith" in exchange for plaintiff's PAC payments.

10

Although all contracts imply a covenant of good faith and fair dealing under New York law and embrace a pledge that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," Dalton v. Educational Testing Serv., 663 N.E.2d 289, 291 (N.Y. 1995), plaintiff conclusorily alleges that its products were unfavorably placed in defendant's promotion materials. Without any specific factual allegation that objectively demonstrates how plaintiff's products were unfairly promoted, plaintiff's claim cannot survive the motion to dismiss.

However, plaintiff's breach of contract claims based on the other challenged actions are sufficiently pled. First, plaintiff alleges that defendant unilaterally gave itself a 2% discount for vendor payments made between March 2017 through August 22, 2017 even though the 2016 VBA contained a simple "net 60" payment provision (i.e., defendant was required to pay all invoices within 60 days of receipt). In response, defendant argues that the 2% discount was explicitly agreed upon by the parties in the 2017 VBA. See Def's Br. Ex. 4 ("2017 VBA"), ECF 28-6, ¶ E. However, the 2017 VBA went into effect on August 22, 2017, and the 2016 VBA was in effect until then. Therefore, plaintiff's allegations regarding defendant's self-imposition of the discount to its vendor payments constitute a well-pled breach of contract claim.

11

Plaintiff also asserts that defendant repeatedly returned plaintiff's products in violation of the return policy requirements and demanded replacements or refunds. The 2017 MSM describes Sterling's return policy as follows:

> "Sterling reserves the right in its sole discretion to subsequently return said customer returns to Seller for credit, repair or replacement at Sterling's sole choice and at Seller's sole expense. . . . <u>Gold or platinum items with excessive wear, damage or alterations (e.g. engraved, shortened, etc.) that render the item unrepairable will not be returned.</u> . . . At its sole discretion, Sterling reserves the right to exercise a return for full credit items that are primarily composed of contemporary metals such as titanium, tungsten, stainless steel, cobalt and sterling silver regardless of the condition of the items."

2017 MSM, at 49 (emphasis added).

Under the MSM, defendant appears to have considerable discretion to demand repairs and replacements from plaintiff. However, the 2017 MSM includes a limitation to that discretionary power and prevents Sterling from returning "gold or platinum items with excessive wear, damage or alterations." <u>Id.</u> Plaintiff alleges that defendant returned products that did not meet the return policy limitations. Assuming as we must at this stage of the litigation the truth of the well-pled allegations, we find that plaintiff has sufficiently pled that defendant's conduct in returning plaintiff's jewelry products violated the 2010 Fulfillment Agreement.

Finally, plaintiff alleges that defendant violated the 2010 Agreement by refusing to return the in-store display units that plaintiff provided to defendant from 2013 through 2016. See Am. Compl. ¶ 30(A). In response, defendant points to a provision in the 2017 MSM, which states that plaintiff "transfers personal property ownership" of in-store display units to Sterling when plaintiff provides them to Sterling. 2017 MSM, at 53. However, as plaintiff maintains, the provision in the 2017 MSM does not state that it applies retroactively to the in-store display units that plaintiff provided to defendant before 2017. Thus, plaintiff's breach of contract claim based on defendant's failure to return the in-store display units is sufficiently pled and survives the motion to dismiss.

## II. Fraud

A successful claim of fraud under New York law requires a showing that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996) (internal citation and quotation marks omitted).

As a threshold matter, Family Fashions "must allege specific facts showing that the promisor intended not to honor his obligations at the time the promise was made" in order to have a well-pled fraud claim. Nat'l Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 664 (S.D.N.Y. 1991), aff'd sub nom. Yaeger v. Nat'l Westminster, 962 F.2d 1 (2d Cir. 1992); see also Songbird Jet Ltd., Inc. v. Amax, Inc., 581 F. Supp. 912, 925 (S.D.N.Y. 1984). Even if we assume arguendo that plaintiff's factual allegations regarding defendant's representations – that Sterling wanted to "prioritize" the launch of the photo jewelry line and requested information to "estimate their projections" because Sterling's senior executives were "interested in the program" based on its "very strong sales potential," Am. Compl. ¶¶ 39, 40 – are true, Family Fashions has failed to assert any specific factual allegations showing that Sterling did not intend to launch the photo jewelry line when those representations were made. As the Second Circuit has consistently held, an optimistic representation "that is shown only after the fact to have been unwarranted does not, by itself, give rise to an inference of fraud." Stevelman v. Alias Research Inc., 174 F.3d 79, 85 (2d Cir. 1999)

Plaintiff alleges that defendant "created photo jewelry through a source in China" and was planning "an extensive launch of photo jewelry . . . to capitalize on the 2018 holiday season," id. ¶ 41, and asserts that this alleged conduct is indicative of

14

defendant's fraudulent intent, see Pl.'s Opp., at 14. However, those allegations are conclusory and are unsupported by well-pled facts. Thus, we dismiss plaintiff's fraud claim.

**III. New York GBL § 349**

To successfully assert a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675, 675 (N.Y. 2012) (internal quotations and citations omitted). "[S]ection 349 is directed at wrongs against the consuming public." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 24 (1995). Of particular significance here, "private contract disputes unique to the parties . . . would not fall within the ambit of the statute." Id. at 25. Thus, if a plaintiff does not "plead and prove injury to the public generally . . . then he cannot benefit from the protection found in Section 349." Clayton v. Katz, No. 10-cv-5755 (ALC), 2012 WL 4378035, at *5 (S.D.N.Y. Sep. 25, 2012).

Defendant argues that plaintiff's GBL claim should be dismissed because it is based solely on plaintiff's private derivative business damages. See Def.'s Br., at 17-18. In response, plaintiff points to two specific allegations in its complaint: (1) the entirety of the obligation to repair products

15

under the ESP is "borne by the vendors . . . through <u>existing vendor warranties to Sterling</u>," Am. Compl. ¶ 7 (emphasis added); and (2) Sterling is defrauding consumers by "selling its customers services to which the customer is already entitled through <u>existing vendor guarantees to Sterling</u>," <u>id.</u> ¶ 50 (emphasis added). According to plaintiff, these allegations are sufficient to establish its GBL claim.

While plaintiff's factual allegations are far from clear, particularly given its allegation that defendant violated the <u>contractual</u> return policy, we will assume <u>arguendo</u> that defendant is selling its customers the ESP for repair services that would be provided to them free of charge under the vendor agreements. Even so, plaintiff lacks standing to assert that claim. The New York Court of Appeals has held that a plaintiff asserting a claim under GBL § 349 lacks standing when the plaintiff's claimed injury is "entirely derivative of injuries that [the plaintiff] alleges were suffered by misled consumers." <u>City of New York v. Smokes-Sprits.Com, Inc.</u>, 12 N.Y.3d 616, 622 (2009); <u>see also</u> <u>Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.</u>, 3 N.Y.3d 200, 207 (2004) (holding that the plaintiff insurance plan could not recover medical payments made on behalf of its subscribers who suffered from smoking-related illnesses even though the defendants' misrepresentations regarding smoking allegedly caused those injuries because the plaintiff's claimed injury was indirect

and "wholly as a result of smoking related illnesses suffered by [its] subscribers"). As defendant maintains, plaintiff's claimed injury is at best "entirely derivative of injuries [that] were suffered by misled consumers" because Family Fashions would have no claim for losses if the allegedly deceived consumers had not been induced to purchase the ESP and had not requested repairs. Def.'s Br., at 19 (citing Smokes-Sprits.Com, 12 N.Y.3d at 622).

Plaintiff argues that its injury is a result of the ESP because Sterling's creation of the ESP program "caused Family Fashions to suffer direct injury." Pl.'s Opp., at 19-20. However, the New York Court of Appeals "has required more than an allegation of 'but for' cause to state a claim for relief under section 349 (h)." Smokes-Sprits.Com, 12 N.Y.3d at 623. Allowing plaintiff to assert a GBL claim based solely on its alleged private business damages would open the gate to "a tidal wave of litigation against businesses that was not intended by the [New York] legislature." Oswego, 85 N.Y.2d at 26. This concern is particularly acute here given that plaintiff has asserted a breach of contract claim grounded on the very same injury it seeks to maintain as a GBL claim.

Since we find that plaintiff may not maintain a claim under the GBL, we do not address defendant's argument that the claim is time-barred, see Def.'s Br., at 20-22.

17

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiffs' Amended Complaint is granted in part and denied in part. The only claims surviving defendant's motion to dismiss are the breach of contract claims based on: (1) defendant's discount of invoice payments; (2) defendant's returns of plaintiff's products in violation of the return policy requirements; and (3) defendant's failure to return plaintiff's in-store display units that were provided to defendant from 2013 through 2016. The Clerk of the Court is respectfully directed to terminate the motions pending at docket entries 28 and 34.

The parties are directed to appear for an initial pre-trial conference on Thursday, September 5, 2019 at 3:30 P.M. at the United States Court House, 500 Pearl Street, New York, New York, in Courtroom 21A.

**SO ORDERED.**

Dated:   New York, New York
         August 12, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE